WILLIAM KIRKPATRICK & others vs. COMMONWEALTH.

Suffolk.  April 5, 1972. — June 16, 1972.

Present, TAURO, C.J., SPIEGEL, REARDON, BRAUCHER, & HENNESSEY, JJ.

Commonwealth, Officers and employees, Claim against the Common-
wealth.  Limitations, Statute of.

Certain State employees were entitled to salary increases according
to the "Professional Salary Schedule" in G. L. c. 30, § 46B, inserted
by St. 1963, 775, § 3, commencing on the effective date of § 3,
although the Director of Personnel and Standardization, pursuant
to c. 775, § 4, as appearing in St. 1964, c. 357, § 1, did not deter-
mine that the positions held by such employees were "professional"
positions until some seventeen months after the effective date of
§ 3, where his determinations were made on the basis of specifica-
tions for the positions which did not significantly alter the duties
and responsibilities of the positions at such effective date; G. L.
c. 30, § 49, was not applicable in the circumstances.  [158–162]
The three year statute of limitations under G. L. c. 260, § 3A, re-
specting claims of certain State employees against the Common-
wealth for salary increases for the period February 1, 1964, to
July 1, 1965, did not start to run until April 5, 1966, when the
Governor approved a deficiency budget for the then current
fiscal year and the claimants, who previously had had no reason
to believe that the Legislature would not provide the money to
pay the salary increases for such period, became aware that it
was not going to do so.  [162–163]

PETITION filed in the Superior Court on June 28, 1968.
The case was heard by Paquet, J.

Joel Z. Eigerman (Morris M. Goldings with him) for
the petitioners.

Robert J. Condlin, Assistant Attorney General, for
the Commonwealth.

SPIEGEL, J.  The petitioners are 109 employees of the
Department of Corporations and Taxation (the depart-
ment) who seek to recover from the Commonwealth,
under the provisions of G. L. c. 258, certain salary in-
creases allegedly due them by virtue of the professional
salary schedule established by St. 1963, c. 775, § 3.
The case was tried on a statement of agreed facts.  The

judge made "findings" and rulings and ordered that judgment be entered for the respondent "as respects each . . . [petitioner] named in the petition." The petitioners appealed from the judge's "Findings, Rulings and Order for Judgment."

We summarize the relevant facts. The petitioners were employed at "times between February 1, 1964, and July 1, 1965," in the department and classified as tax examiners, senior tax examiners, principal tax examiners, tax supervisors, assistant chiefs of bureau, or chiefs of bureau. Their positions were classified pursuant to the position classification plan of the Commonwealth. G. L. c. 30, § 45.

On October 31, 1963, the Governor approved St. 1963, c. 775, entitled "An Act providing salary increases for certain employees of the commonwealth." Section 3 of c. 775 amended G. L. c. 30 by inserting § 46B, which set out a "Professional Salary Schedule" for the professional positions in the pay plan of the Commonwealth. Section 4 provided: "Each professional position, as defined in section forty-six B of chapter thirty of the General Laws, is hereby allocated to the same job group in the professional salary schedule established under said section forty-six B as such position was, immediately prior to the effective date of this section, allocated in the general salary schedule established under section forty-six of said chapter; and nothing in this section shall retard any step increase due any employee." Section 10 provided that § 3 was to take effect on February 1, 1964, and § 4 was to take effect on April 1, 1964.

Subsequent to the approval of St. 1963, c. 775, the Director of Personnel and Standardization of the Commonwealth (director), together with an outside consultant, examined the specifications then in effect for each of the positions in the position classification plan of the Commonwealth, including those held by the petitioners.[1] Sometime before April 1, 1964, the director

---

[1] The specifications for the petitioner's positions were drawn up in 1956, as a result of a study by a private consulting firm.

determined that the positions held by the petitioners were not professional positions. Following this determination appeals were filed with the Bureau of Personnel and Standardization (bureau) by various incumbents of these positions.

On May 7, 1964, the Governor approved St. 1964, c. 357. Section 1 provided: "Chapter 775 of the acts of 1963 is hereby amended by striking out section 4 and inserting in place thereof the following section: — *Section 4.* Each such professional position, determined by the director of personnel and standardization, to be a professional position, as defined in section forty-six B of chapter thirty of the General Laws, . . . is hereby allocated to the same job group in the professional salary schedule established under said section forty-six B as such position was, immediately prior to the effective date of this section, allocated in the general salary schedule established under section forty-six of said chapter; and nothing in this section shall retard any step-increase due any employee." Section 11 provided that c. 357 was to take effect retroactively, as of February 1, 1964.

On October 14, 1964, a hearing relating to the positions of tax examiner, senior tax examiner, principal tax examiner, and tax supervisor was held.[2] The record is unclear as to the identity of the hearing officer or officers. During the hearing the suggestion was made that the specifications then in effect for these positions "did not adequately describe the alleged professional duties actually being performed by the . . . incumbents." The hearing was then suspended for consultation with the Commissioner of Corporations and Taxation (commissioner) on the question of the accuracy of these specifications, with the understanding that amendment of the specifications would be considered by the director. Subsequently the commissioner reviewed the specifica-

---

[2] The hearing relating to the positions of assistant chief of bureau and chief of bureau was held on May 25, 1965.

tions here pertinent and found them "inaccurate for the duties as they exist today." He then submitted the results of his review together with proposed "amended" specifications to the director. All of the specifications pertinent here were "amended" except the specifications for the position of chief of bureau.

On June 15, 1965, and July 1, 1965, the director sent substantially the same letter to the persons who had filed appeals relating to the positions here involved:

"The hearing requested by you re the professional determinations made in accordance with the provisions of Chapter 775 of the Acts of 1963, was held as scheduled . . . . Accordingly, I find that the specification for . . . [the particular office] conforms to the criteria set forth in the above statute [and] is hereby determined to be a professional position.

"Therefore, in accordance with the provisions of General Laws, Chapter 30, Section 49, I will recommend that in the next appropriation act the class of . . . Job Group . . . in the General Salary Schedule . . . be allocated to Job Group . . . in the Profesional Salary Schedule.

"This budgetary action cannot, however, be effected until approved by the Legislature."

The specifications referred to were all "amended" specifications except for those for the position of chief of bureau.

Subsequently, the director submitted to the budget director and to the House and Senate committees on ways and means recommendations that all the positions here involved be transferred from the general salary schedule to the professional salary schedule. The recommendations were approved by the joint committee on ways and means. The transfer of these positions in the schedule of permanent offices and positions was to be effective July 1, 1965. An appropriation sufficient to cover the increase in salaries commencing July 1, 1965, was contained in the deficiency budget of fiscal 1966. St. 1966, c. 131.

1. The petitioners, in summary, contend that "[t]he legislature provided by section 4 of St. 1963, c. 775 (as amended by St. 1964, c. 357) that each professional position 'is hereby allocated' to the professional salary schedule. The . . . [petitioners'] positions were, on appeal, determined to be professional, and were thus among those allocated by the statute effective February 1, 1964 . . . [and] [t]hey were entitled to their corresponding salary differentials from that date, and the court below was in error in ruling that they were not due their increases until the date when their administrative appeals proved successful."

At the outset we are impelled, for reasons which will soon become apparent, to analyze the events subsequent to the director's initial determination that the petitioners' positions were not professional. Statute 1963, c. 775, as amended, does not specifically provide for an appeal from an adverse determination by the director, although § 3 of the statute does provide that the professional salary schedule shall be administered in the same way as the general salary schedule. Under G. L. c. 30, § 49, as amended through St. 1963, c. 240, § 1, any employee of the Commonwealth may appeal a classification affecting his position to the bureau, and "[i]f the bureau finds that the office or position of the person appealing warrants a different position reallocation or that the class in which said position is classified should be reallocated to a higher job group, it shall report such recommendation to the budget director and the house and senate committees on ways and means in accordance with paragraph (5) of section forty-five." General Laws c. 30, § 45 (5), as amended through St. 1962, c. 757, § 62, provides that: "No permanent allocation or reallocation . . . of any office or position subject to the classification and pay plans provided by this section, shall be effected, unless and until" certain specified conditions are met, including approval by the joint committee on ways and means. In brief, under G. L. c. 30, § 49, which incorporated G. L. c. 30, § 45 (5), the

allocation of the position of a successful appellant does not become effective until the legislative branch has complied with certain statutory requirements.

In our opinion, however, G. L. c. 30, § 49, does not apply in the circumstances of this case. In his "Findings, Ruling and Order for Judgment" the judge stated that the "Bureau reversed the Director's decision . . . and, in accordance with C. 30, § 49, submitted the changed classifications to the Legislative Committee on Ways and Means." However, the statement of agreed facts, which the judge incorporated as part of his findings, indicates that in fact it was the director himself, after "amended" specifications had been submitted, who reversed his earlier determinations. Nothing in the record suggests that the director had any authority to act on behalf of the bureau, or that his findings were equivalent to a finding of the bureau. Although it is clear that the petitioners originally directed their appeals from the director's initial determinations to the bureau, the record does not disclose that there was any action on those appeals by the bureau as contemplated by G. L. c. 30, § 49. Nor can such action be fairly implied. We are persuaded that what was involved here was not that the bureau reversed the director, but that the director himself changed his earlier determination. In these circumstances, there was no occasion for the director to act in accordance with G. L. c. 30, § 49.

In contrast to G. L. c. 30, § 49, certain key provisions of St. 1963, c. 775, and St. 1964, c. 357, strongly suggest a legislative intent to immediately effectuate a salary increase for the professional employees of the Commonwealth. The preamble to St. 1963, c. 775, states clearly that its purpose was to "provide *without delay* additional compensation for certain employees of the commonwealth" (emphasis supplied). Originally § 4 of St. 1963, c. 775, provided, in part, that "[e]ach professional position . . . *is hereby allocated* to the same job group in the professional salary schedule . . . as such position was, immediately prior to the effective date of

this section, allocated in the general salary schedule" (emphasis supplied). Section 1 of St. 1964, c. 357, amended this to read, in part: "Each such professional position, *determined by the director . . . to be a professional position . . .* is hereby allocated to the same job group in the professional salary schedule . . . as such position was, immediately prior to the effective date of this section, allocated in the general salary schedule" (emphasis supplied). The judge was of opinion that this language was "susceptible of the interpretation" that only those positions classified as professional by the director on or before the effective date of the statute were entitled to professional pay from the effective date of the statute. We do not agree. The statute as originally worded is unequivocal. The words "without delay" in the preamble and "hereby allocated" in § 4 are plain and emphatic. Those in positions requiring professional duties and qualifications on the effective date of the statute were to be paid accordingly.

The statute, however, although it did define "professional position" in § 3, did not state who was to make the initial determination whether a particular position fell within the definition. Statute 1964, c. 357, § 1, corrected this by providing that the director would make the determination. We do not, however, believe that the Legislature intended to make the effective date of pay pursuant to the professional salary schedule dependent on the timing of the director's determination. Such an interpretation would lead to illogical and inequitable results. In the instant case, the petitioners were presumably performing the same jobs on the effective date of the statute (February 1, 1964) as they were some seventeen months later when the director finally determined their positions to be professional. We can discern nothing in the statute to indicate a legislative intent to treat the petitioners differently from other professionals employed by the Commonwealth whose positions were determined to be professional on or about the effective date of the statute. Furthermore, as the

petitioners point out, if the Legislature had intended to make the effective pay date turn on the date of the director's determination, the statute could easily have been worded as follows: "Each such professional position, determined by the director . . . to be a professional position, . . . is hereby allocated to the same job group in the professional salary schedule . . . as such position was, *immediately prior to the director's determination*, allocated in the general salary schedule" (emphasis supplied). The Legislature did not do so. We conclude from this and the other reasons cited above that it did not intend this result.

2. Five of the six positions here involved were determined to be professional by the director on the basis of specifications which were "amended" after the director's initial adverse determination. The specifications for chief of bureau are not amended. The question to which we now address ourselves is whether the "amendments" require a conclusion different from that which we have reached in point 1.

The pertinent statutory provision is § 3 of St. 1963, c. 775, which defines "professional position" as one "(1) the specifications for which require (a) a consistent exercise of discretion and judgment in a formal and well-organized field of knowledge, and (b) academic study, training, or experience of a scope and character commensurate with the duties of the office or position, and (2) the duties of which are described under a title classified as a professional occupation under code numbers 0–00 to and including 0–39.99 in the 'Dictionary of Occupational Titles', prepared by the Employment Service in the United States Department of Labor, a copy of which is on file in the bureau of personnel." The director is clearly required by the statute to look to the specifications in making his determination whether certain positions are to be classified as professional. If in this case the "amendments" had significantly altered the duties and qualifications required by the positions, we have no doubt that the petitioners would have no

right to be paid pursuant to the professional salary schedule from the effective date of the statute. The situation here, however, is that the specifications may not have been in strict conformity with the actual work being performed at the time the director made his initial determination. If so, it would seem inequitable to penalize the petitioners by delaying their pay increases while the up-to-date specifications were drafted.

There remains, moreover, the distinct possibility that all we are really dealing with here is a mere exercise in semantics. We have compared the original specifications with the "amended" specifications, and the only noteworthy change appears to be the addition or substitution of the words "audits" or "auditing" for the words "examines," "checks," or "accounting." For instance, where the specifications for the position of tax examiner formerly listed "[e]xamines tax records" as a duty, it now lists "[a]udits and examines tax records." Similarly, where the position formerly required a "[w]orking knowledge of the theory and practice of accounting," it now requires a "[w]orking knowledge of the theory and practice of accounting and auditing." Even assuming, as the Commonwealth argues, that the terms added or substituted were more "professional," we cannot believe that the result was to "significantly . . . [alter] the duties and responsibilities of the positions specified." The original specifications were drafted before the distinction between professionals and nonprofessionals in the pay plan of the Commonwealth was drawn by St. 1963, c. 775. Thus, we are not influenced by the slight rewording of the specifications. Humpty Dumpty's observation is appropriate here: " 'When I use a word, . . . it means just what I choose it to mean — neither more nor less.' . . . 'The question is, . . . which is to be master — that's all.' Carroll, Through the Looking-Glass (Gardner anno. ed. 1960) 269." *Boston Safe Deposit & Trust Co.* v. *Fleming,* 361 Mass. 172, 190 (dissenting opinion).

3. The Commonwealth's final contention is that the

Kirkpatrick *v.* Commonwealth.

cause of action alleged by the petition is barred by the statute of limitations.  Claims against the Commonwealth (G. L. c. 258) must be brought within three years after the cause of action accrues.  G. L. c. 260, § 3A. The judge rejected this contention.  The petitioners argue that the Commonwealth did not appeal from this ruling, that the question is not jurisdictional and thus cannot now be raised.  However, since this case is before us on a statement af agreed facts, we may consider all issues raised by the record.  *Gifford Sheltering Home Co.* v. *Board of Appeals of Wayland,* 349 Mass. 292, 294.

This action was begun on June 28, 1968.  It is our view that the statute of limitations did not begin to run until April 5, 1966, the date that the Governor approved St. 1966, c. 131, the deficiency budget for the fiscal year ending June 30, 1966.  The petitioners could not have sued in court until they had exhausted their attempts to secure an administrative remedy.[3]  After they had received notification from the director that he had changed their classifications, they had no reason to believe that their increase in pay would not be paid by the Commonwealth for the period in question until the passage of the deficiency budget in 1966.  It was reasonable for them to have believed that the Legislature would include the amounts of which they were deprived. When the deficiency budget failed to include such amounts, then at that time the petitioners were aware of the fact that they were not going to receive the salary increases for the period in dispute.  It seems to us that the only reasonable deduction to be made is that the statute of limitations would not begin to run until that date, namely, April 5, 1966.

4. Each petitioner is entitled to receive an amount equal to the difference between the salary he actually

---

[3] Although we have stated, in paragraph numbered 1 of this opinion, that there was no action by the bureau on the petitioners' appeals as contemplated by G. L. c. 30, § 49, it is obvious that the petitioners were pursuing the proper statutory remedy open to them in the circumstances existing at the time the director made the erroneous classifications.

received and the salary due him under the provisions of St. 1963, c. 775, § 3, between February 1, 1964, and July 1, 1965, plus interest.

5. The order for judgment is reversed. Judgment is to be entered for each petitioner in an amount to be determined by further proceedings in the Superior Court in accordance with this opinion.

*So ordered.*